## HOCKER *v.* REAS *et al.*

WHERE property is mortgaged to secure two notes falling due at different periods, and the mortgage is foreclosed by suit upon the note first falling due, and then, after the period for redemption has passed, but before the Sheriff has executed his deed to the purchaser, this first note, or rather the judgment thereon, is paid : *Held,* that the payment of this note effected the redemption of the property, and left it subject to the mortgage to secure the second note.

*Held,* further, that the lien of the mortgage for the second note could not be displaced by a sale under prior incumbrances—mechanics' liens—in proceedings to which the holder of the second note was not a party.

APPEAL from the Ninth District.

Suit to enforce a sale by a Sheriff and to set aside a decree on the following facts :

August 21st, 1857, E. C. Kelley, Curtis and Garland, composing the firm of Kelley & Co., mortgaged the premises to defendant, Reas, to secure two notes maturing—the one on the fifteenth of November following, the other on the first of August, 1858. Reas, the mortgagee, foreclosed on the first note before the second fell due—the complaint being silent as to the existence of the second note.

At the foreclosure sale, on the twenty-second of February, 1858, the whole property was sold, plaintiff here becoming the purchaser for the amount of the judgment and costs, but in consequence of litigation between the parties, not obtaining a Sheriff's deed upon the expiration of the time for redemption. Subsequently, plaintiff began suit against Kelley & Co. and to enforce a mechanics' lien from November, 1857, for $15,000, upon premises which include the property mortgaged to secure the above named notes, and in October, 1859, these premises were sold at Sheriff's sale under a decree dated May, 1859, enforcing said mechanics' lien, the plaintiff here becoming the purchaser and receiving a Sheriff's deed six months thereafter.

In January, 1859, plaintiff, Hocker, entered into an agreement with Kelley & Co., by which all matters of difference between them were to be settled. This agreement was embodied in three papers, signed by Hocker and dated January 12th, 1859. Paper exhibit

" C " provided that the debt then due Hocker as purchaser of the property under the judgment in the case of *Reas* v. *Kelley & Co.*—being the suit on the first note—was to be canceled upon the receipt by him of $3,000 on a certain day, to wit: April 15th, 1859, up to which time Reas gave Kelley & Co. to redeem.   The next paper, after reciting that, whereas Hocker and others, on the tenth of August, 1858, had recovered judgment against Kelley & Co. for $4,924.15, and enforcing a mechanics' lien for the same upon the property in dispute, and that Hocker had purchased the property at Sheriff's sale under said judgment on the thirtieth of October, 1858, stipulates that Hocker extends the time for redemption from such sale to July 1st, 1859, if Kelley & Co., or their successors, pay to him on or before that day, $3,000, with interest thereon after April 15th, 1859, at two per cent. per month.   The next paper recites that, in a suit by Hocker against Kelley & Co., to enforce a mechanics' lien amounting to about $15,000 on the property, their attorney has filed an answer consenting that plaintiff have judgment on the eighteenth of April, 1859, for said sum, with interest on $12,000 at two per cent. per month from April 15th, 1859, and in consideration thereof Hocker agrees to stay execution and discharge the judgment so to be rendered, if the defendants or their successors pay to him $12,000, with interest as follows, to wit: $2,000, with interest at two per cent. per month, on the first of August, 1859; $2,000, with like interest, on the first of each succeeding month, until the sum of $12,000 and interest has been paid; and if defendants fail to make the August, September and October payments as above, then plaintiff is to issue execution for the full amount of said judgment, to wit: $15,000; but if said first three payments are duly made, then for any default in the subsequent payments execution shall issue only for the amount of the default.

On the fifth of May, 1859, Kelley & Co., per J. M. Kelley, (so the Court finds) paid said $3,000 in discharge of said judgment. No deed was ever executed by the Sheriff to Hocker in pursuance of said sale.   This is so found by the Court, though respondent claims such deed was executed.   The facts seem to be, that on the fifteenth of April, 1859, the time limited in Hocker's agreement

as to the redemption of the property, J. M. Kelley, claiming the right to redeem as assignee of a mortgage made to J. Neely Johnson, and having made some arrangements with Kelley & Co. by which he was to advance money for that purpose, tendered to Hocker the $3,000, which he refused on the ground that he held other liens on the property. The Sheriff then, on the next day, made a deed to Hocker. But on his motion for a writ of assistance to put him in possession, J. M. Kelley answered, resisting the motion and setting up the above among other facts; and the Court, in denying the motion, held this Sheriff's deed to be void, because Kelley had tendered the $3,000 in accordance with Hocker's agreement with Kelley & Co., and had a right to redeem. In August, 1858, when the second note to Reas became due, he brought suit on it and to foreclose the mortgage, and obtained judgment and decree of foreclosure on the twenty-seventh of that month. This judgment was assigned to defendant, McCampbell, who in May, 1860, procured an order of sale thereon, under which the Sheriff was about to sell when this suit was brought by Hocker to enjoin the sale, on the ground that a sale and deed would cast a cloud upon plaintiff's title, and to set aside the decree foreclosing on the second note. The Court below held that the payment of the $3,000 by Kelley & Co., before a deed was executed by the Sheriff, inured to the benefit of Reas, who held the mortgage for the second note; that Hocker's equity by purchase without deed was no higher than the equity of Reas by mortgage unsatisfied; and that when Hocker's equity was satisfied by payment of the debt by Kelley & Co., the original equity between Kelley & Co. and Reas was greater than any subsequent equity held by Hocker upon purchase under judgments afterwards acquired.

The preliminary injunction was dissolved, and defendant permitted to go on and sell. Plaintiff appeals.

*Thomas Sunderland,* for Appellant.

I. The foreclosure on the first note and sale extinguished the lien of the mortgage as to the residue of the debt secured by it. (1 Douglass Mich. 217; 1 Penn. 44; 1 Barb. 388; *Hawkins* v. *Hill,* 15 Cal. 499; Pr. Act, sec. 248; *Mussina* v. *Bartlett,* 8 Por-

ter, 284–5 ; *Adams* v. *Essex,* 1 Bibb, 149 ; Hilliard on Mortgage, Vol. 2, p. 170, par 42 f.)

II.   There was no redemption.   The contracts on this subject are to be construed as an entire contract, and there could be no redemption unless the whole was paid.   The two payments were mere installments.

III.   The appellant acquired a title by his first deed, which could only be divested by conveyance or decree.

*Heydenfeldt* and *Tod Robinson,* for Respondent.

The respondent claims that a decree of foreclosure and a sale thereon of mortgaged property does not alter the relation of the mortgagor to that property until after the period of redemption has expired and a deed executed.   The mortgagor has still the right of possession.   The mortgagee or purchaser has only a lien on the land for the repayment of the purchase money until default of redemption.   The sale of the land is only a continuation of the hypothecation until, by lapse of time, the equity of redemption is barred, and a lien becomes a title absolute.

BALDWIN, J. delivered the opinion of the Court—COPE, J. concurring.

The mortgage foreclosure for the first note due did not vest a title in the purchaser until the period of redemption had passed, and a deed of the Sheriff under the foreclosure sale.   But before this the debt was paid, and the effect was the redemption of the premises.   This left them subject to the mortgage for the second note, the lien for which was not displaced by the sale under junior incumbrances in proceedings to which the respondent, the holder of the second note, was not a party.   Even if this question has not been determined by the judgment of the Court below, referred to in the transcript, it seems to be a plain principle which fully warrants the decree below, which is affirmed.